IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-484-FL

| | |
|---|---|
| GLORIA J. ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| PACIFIC COAST FEATHER COMPANY, ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on three discovery-related motions: a motion (D.E. 35) by plaintiff Gloria Allen ("plaintiff") to compel discovery from defendant Pacific Coast Feather Company ("defendant"); defendant's motion (D.E. 45) for a protective order; and plaintiff's second motion (D.E. 49) to compel discovery. The motions have been fully briefed.[1] They have been referred to the undersigned for disposition pursuant to 28 U.S.C. §636(b)(1)(A). (*See* Minute Entries after D.E. 41, 51, 55).

## BACKGROUND

Plaintiff commenced this employment discrimination action on 5 November 2010. (*See* Compl. (D.E. 1)). In her amended complaint (D.E. 26), plaintiff alleges that she was employed as a sewer for defendant, which is in the business of manufacturing pillows and bedding, from 28 July 2008 until 3 August 2009. (Am. Compl. ¶¶ 11, 23, 151). She worked in the Pillow and Feather Departments from 28 July 2008 until 6 April 2009 and full-time in the Pillow

---

[1] In support of her first motion to compel, plaintiff filed a memorandum (D.E. 37) with exhibits (D.E. 37-1 through 37-6). Defendant filed in opposition a memorandum (D.E. 40) and a declaration (D.E. 41) with exhibits (D.E. 41-1 through 41-4). In support of its motion for a protective order, defendant filed a memorandum (D.E. 46) and declaration (D.E. 47). Plaintiff filed in opposition a memorandum (D.E. 51) with exhibits (D.E. 51-1 through 51-7). In support of her second motion to compel, plaintiff filed a memorandum (D.E. 50) with exhibits (D.E. 50-1 through 50-8). Defendant filed a memorandum in opposition (D.E. 53) and declaration (D.E. 54) with exhibits (D.E. 54-1 through 54-7).

Department thereafter until she was terminated. (*Id.* ¶¶ 29, 48). She claims that she suffered from symptoms of carpal tunnel syndrome caused by her sewing. (*Id.* ¶ 42). She earned both an hourly rate of pay and production pay, which was based on the amount the department in which she worked produced above its goals. (*Id.* ¶ 31).

For the pay period from 5 to 18 July 2009, plaintiff allegedly worked 120 hours and received no production pay. (*Id.* ¶¶ 54, 61). She questioned defendant about its failure to provide production pay for that period and also contacted the North Carolina Department of Labor ("NCDOL"). (*Id.* ¶¶ 63, 65, 71, 84, 137). On 27 July 2009, plaintiff saw her physician for pain in her hands, who advised her to remain out of work for a short period of time. (*Id.* ¶ 122). When plaintiff returned to work from this medical-related absence on 3 August 2009, she was terminated, allegedly for her absences. (*Id.* ¶¶ 140, 151, 155).

In her amended complaint, plaintiff contends that defendant unlawfully retaliated against her in violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et seq.* (Am. Compl. ¶¶ 183-194); wrongfully terminated her in violation of public policy (*id.* ¶¶ 195-200); and wrongfully deprived her of benefits to which she was entitled pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* (*id.* ¶¶ 201-26). Defendant denies the material allegations in plaintiff's amended complaint. (*See generally* Ans. to Am. Compl. (D.E. 27)).

2

Case 5:10-cv-00484-FL   Document 69   Filed 04/26/12   Page 2 of 13

# DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. See generally Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Equal Employment Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

## II. PLAINTIFF'S FIRST MOTION TO COMPEL (D.E. 35)

During discovery, plaintiff served on defendant her first set of interrogatories and requests for production.[2] Defendant served its initial responses on 16 August 2011 and supplemental responses on 11 November 2011 (Pl.'s Mem. (D.E. 37) 1). Plaintiff now moves to compel responses to two requests for production, nos. 22 and 31.

### A. Request for Production No. 22

Request for Production No. 22 seeks:

> All correspondence, emails, reports, notes, or other documents obtained, generated, or discovered during Defendant's investigation into Plaintiff's complaints regarding Darnell Evans [("Evans")] diverting product for sale at the local flea market referred to in Paragraphs 170 and 172 through 175 of the Amended Complaint.

(Pl.'s 1st Mot. to Compel 2).

The above-referenced paragraphs in plaintiff's amended complaint allege that after her termination, plaintiff notified her former supervisor and production manager that she believed that her production pay was denied because the production data was purposefully wrongfully recorded in order to allow plant manager Evans to divert product to be sold at a flea market. She alleges that she notified the NCDOL and other managers and directors of defendant of this specific belief. (Am. Compl. ¶¶ 170-75).

Plaintiff accordingly contends that the requested materials are relevant because Evans was directly involved in her termination and is a witness in the case. She claims that his credibility is at issue as is the calculation of production pay.

---

[2] Plaintiff did not provide the court with a copy of the actual requests served, but rather only excerpts of the requests at issue and defendant's responses with objections to those requests. Defendant does not challenge the authenticity of the excerpts.

4

Defendant objects to the production of the documents sought on grounds that they are not relevant. It argues that Evans was not the decision maker in plaintiff's termination and that the allegations against Evans concern sheets, not pillows, and plaintiff worked only in the Pillow Department. Defendant did produce Evans' personnel file, which includes a written reprimand for his donation of sheets to a church organization in a manner that did not adhere to company policy, but contends that no further production is warranted. Finally, it argues that because plaintiff is not asserting a wage and hour claim against it, information relating to the calculation of her production pay is not relevant.

The court disagrees. The documents sought relate, in part, to the circumstances underlying plaintiff's complaints to the NCDOL and defendant, and thereby plaintiff's REDA claim. They also relate to possible motivations for defendant's termination of her and thereby her wrongful termination claim. Specifically, if Evans were engaged in the misconduct alleged, defendant would arguably have had an incentive to discharge plaintiff to prevent further inquiry by her into such misconduct. Further, the documents sought relate to all of plaintiff's claims in a literal sense because the facts underlying them are expressly pled, in detail, in the amended complaint.

The fact that discovery already produced shows at least some impropriety by Evans in connection with the alleged product diversion in question tends to show that the allegations are not frivolous. Moreover, of course, plaintiff need not take defendant's word that the production sought would not provide any additional useful information on the issue of the alleged diversion of the donated product.

This portion of plaintiff's motion to compel is therefore ALLOWED. Defendant shall produce to plaintiff the documents sought in Request for Production No. 22 no later than 10 May 2012 and shall include with them a response signed by counsel stating that the production is complete to the best of the signer's knowledge, information, and belief formed after reasonable inquiry. *See* Fed. R. Civ. P. 26(g)(1).

### B. Request for Production No. 31

Request for Production No. 31 seeks "employee rosters identifying all of [defendant's] employees from August 1, 2008 until December 31, 2009." (Pl.'s 1st Mot. to Compel 4). Plaintiff argues that the request seeks relevant information because it will enable her to identify and contact potential witnesses to support her claims. She argues specifically that she knows of potential witnesses but is unsure of their names and needs the list to jog her memory. Defendant contends that its prior production of employee rosters for its Feather and Pillow Departments, where plaintiff worked, is all that plaintiff is entitled to because the experiences of employees outside these two departments is not relevant.

At summary judgment or trial, in order to establish a prima facie case of disparate discipline or pretext, plaintiff may need to establish that disciplinary measures enforced against her were more severe than those enforced against other similarly situated employees. *Mercer v. North Carolina Dep't of Trans.*, No. 5:09-CV-379-FL, 2010 WL 5890394, at *5 (E.D.N.C. 23 Dec. 2010); *M&R adopted*, 2011 WL 780539 (28 Feb 2011). In determining whether two employees are similarly situated for these purposes, the court looks at all relevant factors which include whether the individuals were disciplined by the same supervisor, the gravity of the offenses, and the seriousness of the punishments imposed. *Id.*; *see also Haywood v. Locke*, 387

6

Fed. Appx. 355, 359 (4th Cir. 2010) (to show that a plaintiff is similar to a comparator, a plaintiff must provide evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"), *cert. denied.*, 131 S. Ct. 1491 (2011).

However, the standard for discoverability is not coterminous with that of admissibility and, indeed, is much broader. Fed. R. Civ. P. 26(b)(1); *Frank Betz Assoc., Inc. v. Jim Walter Homes, Inc.,* 226 F.R.D. 533, 536 (D.S.C. 2005) (standard for whether to allow motion to compel discovery not limited by whether the information is admissible under the Rules of Evidence). "In a disparate treatment case, discovery should be 'reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.'" *Rodger v. Electronic Data Systems, Corp.,* 155 F.R.D. 537, 540 (E.D.N.C. 1994) (quoting *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618-19 (D.D.C. 1983)).

Here, which individual or individuals were the decision makers responsible for her termination is in dispute. While defendant contends that the decision was made solely by Supervisor Bonnie Pendergrass ("Pendergrass") in the Pillow Department where plaintiff last worked, plaintiff points to evidence suggesting that others were also involved. (*See, e.g.,* Dep. of Samuel Valle (D.E. 51-3) 109:16 to 110:14). Thus, the record does not rule out the possibility that Evans, as Plant Manager, was the decision maker or one of several decision makers in plaintiff's termination. Accordingly, at this point, her potential comparators can reasonably be deemed to include all employees at the plant where plaintiff worked and not only those who

7

worked directly under Pendergrass in the Pillow Department. *See Rodger*, 155 F.R.D. at 540 (citing favorably *Prouty v. National Railroad Passenger Corp.*, 99 F.R.D. 545, 547 (D.D.C. 1983), which limited "discovery to the department in which the plaintiff worked and those other departments under the jurisdiction of the larger departmental unit which supervised all the departments").

Moreover, plaintiff has identified a specific need for the rosters of employees at this plant—to refresh her recollection about particular employees concerning whom she already apparently has at least some information pertinent to her claims. The time period for which the documents are sought is reasonable. Lastly, defendant makes no contention that production of the rosters would be unduly burdensome to defendant.

This portion of plaintiff's first motion to compel shall therefore be ALLOWED to the extent it seeks rosters for employees at the plant where plaintiff worked. It shall otherwise be DENIED. Defendant shall produce to plaintiff the documents sought in Request for Production No. 31 as so limited no later than 10 May 2012 and shall include with them a response signed by counsel stating that the production is complete to the best of the signer's knowledge, information, and belief formed after reasonable inquiry.

### III.    DEFENDANT'S MOTION FOR A PROTECTIVE ORDER (D.E. 45)

Plaintiff has served on defendant a notice to take its deposition pursuant to Fed. R. Civ. P. 30(b)(6). (Dep. Notice (D.E. 47)). Defendant's motion for a protective order seeks to exclude or limit five topics specified by plaintiff: topics 5, 6, and 7, and topics 8 and 9. These sets of topics are addressed separately below.

8

### A. Topics 5, 6, and 7

Topics 5, 6, and 7 concern the calculation of production pay for the pay period 5 to 18 July 2009. Specifically, topic 5 seeks information about "[p]roduction in the Pillow Department for the pay period from July 5, 2009 until July 18, 2009." (Dep. Notice ¶ 5 at 6-7). This topic includes information on policies or procedures relating to production pay or production-based incentive bonuses as well. (*Id.* at 7). Topic 6 seeks information about "production of cuddle rolls in the Pillow Department during June and July 2009." (Dep. Notice ¶ 6 at 7). And topic 7 seeks information concerning defendant's reasons for not paying production pay to plaintiff for the pay period from 5 July 2009 to 18 July 2009. (Dep. Notice ¶ 7 at 7).

Defendant argues that because plaintiff has not asserted a wage and hour claim against it, the reasonableness of her wage complaints are not relevant. It accordingly contends that inquiry into the calculation of production pay cannot be reasonable calculated to lead to relevant information.

The court disagrees. The reasonableness of plaintiff's wage complaints and her good faith belief in asserting her complaints clearly relate to the protected activity that forms the basis of her retaliation claim. *Johnson v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.S*, 3:11-CV-391, 2011 WL 5974457, at *3 (W.D.N.C. 20 Oct. 2011) ("REDA prohibits employers from discriminating or taking retaliatory action against an employee who in good faith files a claim against his employer or engages in other protected activities under the statute."). Indeed, one of defendant's affirmative defenses is that plaintiff's complaint to the NCDOL was not in good faith. (Am. Ans. Affirmative Def. No. 5). Plaintiff should be allowed to demonstrate that her complaint was made in good faith and explore the factual basis for that claim.

9

For these reasons, defendant's motion for a protective order as to Topics 5, 6, and 7 is DENIED. Defendant shall designate a person to testify on these topics in accordance with Rule 30(b)(6).

**B.     Topics 8 and 9**

Topics 8 and 9 request information on other employees. Specifically, topic 8 seeks information regarding the employees who worked in the Feather and Pillow Departments from 1 August 2008 through 31 December 2009, including those identified in the chart contained in PCF 000599-608. (Dep. Notice ¶ 8 at 7). Topic 9 seeks detailed information on the attendance and discipline of 10 identified employees. (*Id.* ¶ 9 at 7). Defendant asks that these topics be limited to other sewers who were supervised by Pendergrass in the Pillow Department, the department where plaintiff was working at the time she was fired, from 3 August 2008 through 3 August 2009. It argues that this group of employees comprises plaintiff's comparators.

As previously discussed, it is premature to limit plaintiff's potential comparators as defendant advocates. The court therefore finds topics 8 and 9 to be within the scope of discovery. *Pitrolo v. County of Buncombe*, No. 1:06CV199, 2007 WL 1041193, at *1-2 (W.D.N.C. 4 Apr. 2007) ("While it may be valid to argue at trial or at summary judgment that evidence as to a given employee is not admissible inasmuch as such person is not a 'valid comparator,' *see Wheatley v. Wicomico County, Maryland*, 390 F.3d 328, 334 (4th Cir. 2004), discovery that is designed to find valid comparators is not objectionable simply because it may also include information that may not be admissible."). Defendant's motion for a protective order is accordingly DENIED as to these topics, meaning that the motion is denied in its entirety. Defendant shall designate a person to testify on topics 8 and 9 in accordance with Rule 30(b)(6).

10

## IV. PLAINTIFF'S SECOND MOTION TO COMPEL (D.E. 49)

Plaintiff's second motion to compel seeks documents requested in Requests for Production Nos. 2, 3, and 4. The requests all relate to Gail Stetzler ("Stetzler"), one of plaintiff's former co-workers. Plaintiff contends that Stetzler not only has knowledge regarding plaintiff's claims, but is a potential comparator because she was allegedly disciplined for complaining to the NCDOL. (Pl.s' Mem. (D.E. 50) 2-3). The three requests for production seek: (1) Stetzler's complete personnel file (Request No. 2); (2) Stetzler's complete wage records from 1 August 2008 through 21 December 2009 (Request No. 3); and (3) Stetzler's complete records of hours worked from 1 August 2008 through 21 December 2009 (Request No. 4). (Pl.'s 2d Compel Mot. to Compel 2, 3). Defendant objects to the requests on grounds that they are beyond the scope of permissible discovery and not reasonably calculated to lead to the discovery of admissible evidence.

### A. Request for Production No. 2

As to Request for Production No. 2, the court finds that plaintiff has adequately demonstrated for purposes of discovery that Stetzler is a potential comparator. Stetzler has provided a release authorizing the production of her personnel records, thereby eliminating her privacy as a potential obstacle to production. While defendant has already produced portions of Stetzler's personnel file (*i.e.*, discipline record, personnel action forms, application forms, time-off sheets, and general employment documents) (*see* Def.'s Opp. Mem. (D.E. 53) 1), the record does not establish that the broader production sought would be unduly burdensome or otherwise outside the permissible scope of discovery, particularly in light of Stetzler's release.

11

According, plaintiff's motion to compel production is ALLOWED with respect to the documents sought in Request for Production No. 2. Defendant shall produce these documents no later than 10 May 2012 and shall include with them a response signed by counsel stating that the production is complete to the best of the signer's knowledge, information, and belief formed after reasonable inquiry.

### B.     Requests for Production Nos. 3 and 4

With respect to Requests for Production Nos. 3 and 4, plaintiff has demonstrated that Stetzler's wage and hour records are relevant since Stetzler allegedly had her hours reduced as a direct result of complaints she made to the NCDOL. The court finds that requested time frame, 1 August 2008 through 21 December 2009, to be appropriately limited in scope. Defendant indicates that the original time records are stored off-site and that retrieval would be burdensome. Accordingly, at this time, only the electronic earnings records for Stetzler will need to be produced.

Plaintiff's motion to compel the wage and hour records is therefore ALLOWED IN PART and DENIED IN PART with respect to Requests for Production Nos. 3 and 4. Defendant shall produce to plaintiff no later than 10 May 2012 the electronic earnings records for Stetzler for the period 1 August 2008 through 21 December 2009. Defendant shall include with the records a response signed by counsel stating that the production is complete to the best of the signer's knowledge, information, and belief formed after reasonable inquiry.

### **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that plaintiff's first motion (D.E. 35) to compel discovery is ALLOWED IN PART and DENIED IN PART; defendant's motion (D.E.

45) for a protective order is DENIED; and plaintiff's second motion (D.E. 49) to compel discovery is ALLOWED IN PART and DENIED IN PART. Pursuant to the court's prior order (D.E. 56), plaintiff's Rule 30(b)(6) deposition of defendant shall be conducted no later than 28 May 2012.

    SO ORDERED, this the 26th day of April 2012.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge